**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GENGHISCOMM HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO GROUP LTD.<br><br>Defendant. | Case No. 2:26-cv-947<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendant Lenovo Group Limited ("LGL") that relates to U.S. patents owned by GenghisComm, including at least U.S. Patent Nos.: 11,381,285 (the "'285 Patent"); 10,200,227 (the "'227 Patent"); 10,389,568 (the "'568 Patent"); 11,223,508 (the "'508 Patent"); 11,804,882 (the "'882 Patent"); 9,768,842 (the "'842 Patent"); 11,252,005 (the "'005 Patent") (collectively, the "Patents-in-Suit").

**THE PLAINTIFF GENGHISCOMM**

1. Plaintiff GenghisComm Holdings, LLC ("GenghisComm") is a Colorado limited liability company with an address at 1942 Broadway Street, Suite 314c, Boulder, Colorado 80302.

2. GenghisComm is the owner of record and assignee of each of the Patents-in-Suit.

3. GenghisComm has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patents-in-Suit during all relevant time periods.

4. Steve Shattil, Director of GenghisComm, is the named inventor on the patents and holds advanced degrees in physics and electrical engineering.

5. Mr. Shattil invented technologies which are essential parts of cellular and wireless

standards.

6. Neither Mr. Shattil nor GenghisComm had any involvement in setting the 4G/LTE or 5G standards.

7. Nonetheless, the 4G/LTE and 5G standards setting bodies, (e.g., 3GPP and ETSI, etc.) included the technology that GenghisComm disclosed and claimed in these standards.

8. Standard setting bodies adopted the technology that GenghisComm taught and disclosed into the 4G/LTE and 5G Standards.

9. GenghisComm and Steve Shattil have no FRAND obligations.

10. Any FRAND valuation framework does not apply to GenghisComm's patents because GenghisComm has no FRAND obligations.

11. Others have made extensive efforts to challenge the validity of the GenghisComm patents.

12. Unified Patents filed an *ex parte* reexamination of 10,200,227 (Reexam no. 90/019,411).

13. In October of 2025, the PTAB issued an Order reversing the Examiner's reexamination. Exhibit A.

14. On February 26, 2026, the USPTO issued a Reexamination Certificate. Exhibit B.

15. Samsung filed 9 IPRs on GenghisComm patents: IPR2025-00780, IPR2025-00781, IPR2025-00788, IPR2025-00789, IPR2025-00790, IPR2025-00791, IPR2025-00792, IPR2025-00793, and IPR2025-00899.

16. The PTAB denied all of Samsung's IPRs.

17. Samsung filed five requests for *ex parte* reexamination of other GenghisComm

patents.

18. For example, Samsung's *ex parte* reexamination request as to 11,424,792 (Reexam 90/019,848) resulted in a January 26, 2026 Reexamination Certificate. Exhibit C.

19. For example, Samsung's *ex parte* reexamination request as to 11,381,285 (Reexam 90/015,417) resulted in a July 1, 2026 Reexamination Certificate. Exhibit D.

20. Samsung's requested *ex parte* re-examinations are pending for two of the Patents-in-suit:

| Patent | Reexamination | Status |
|---|---|---|
| 9,768,842 | 90/015,639 | Final Rejection on September 16, 2026; on appeal to PTAB |
| 11,252,005 | 90/019,847 | Final Rejection on September 30, 2026; on appeal to PTAB |

21. With respect to the '842 patent, on September 16, 2026 the USPTO Examiner issued a Final Office Action rejecting claims 1-4, 7-9, 11, 17-18, 22, 24-26, and 28. GenghisComm intends to respond to appeal to the PTAB.

22. With respect to the '005 patent, on September 30, 2026 the USPTO Examiner issued a Final Office Action rejecting claims 13, 18, and 19. GenghisComm intends to respond to appeal to the PTAB.

23. Even from the patents in ongoing reexaminations, many of the claims in this case are not the claims for which the USPTO ordered reexaminations or office actions, e.g. claims 2, 8, 9, and 10 from the '005 patent.

24. The Court in the Eastern District of Texas issued a Claim Construction Order on December 1, 2025. Exhibit E.

25. Among other rulings, the claim construction Order rejected arguments that claims were indefinite.

26. Claim construction proceedings are ongoing in the case against Apple.

## DEFENDANT LENOVO

27. Defendant Lenovo Group Limited ("LGL") is a foreign company organized and existing under the laws of China, with its headquarters at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R. of China.[1] LGL is the ultimate parent of the Lenovo group of companies (collectively, "Lenovo").[2] Under Hague Convention Article 10(a), Defendant Lenovo Group Limited can be served with process by mail with return receipt.

28. Motorola Mobility LLC ("Motorola") is a wholly owned subsidiary of LGL.[3] Lenovo acquired Motorola from Google in 2014, and the Motorola business has since operated within the Lenovo group.[4] Motorola's website states that "All mobile phones are designed and manufactured by Motorola Mobility LLC, a wholly owned subsidiary of Lenovo."[5]

29. Lenovo does business in Texas and in the Eastern District of Texas, directly or through intermediaries, such as LGL's wholly-owned subsidiaries, agents, authorized distributors, authorized retailers, and others. Lenovo is responsible for designing, marketing, distributing, making, using, importing, selling, and/or offering for sale Lenovo-branded and Motorola-branded wireless mobile devices (including smartphones, tablets, laptops, and watches) and related applications and services.

---

[1] LGL 2026 Annual Report at 181 (https://doc.irasia.com/listco/hk/lenovo/annual/2026/ar2026.pdf).
[2] *Id*.
[3] *Id*. at 265.
[4] https://news.lenovo.com/pressroom/press-releases/lenovo-completes-full-acquisition-motorola-mobility-from-google/.
[5] https://www.motorola.com/us/en/homepage.

30. Lenovo has authorized sellers and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including in this District, and to consumers throughout this District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; Walmart Supercenter, 515 E Loop 281, Longview, TX 75605; AT&T Store, 1712 East Grand Avenue, Marshall, Texas 75670; T- Mobile, 1806 East End Boulevard North, Suite 100, Marshall, TX 75670; Verizon authorized retailers, including Russell Cellular, 1111 East Grand Avenue, Marshall, Texas 75670; Victra, 1006 East End Boulevard, Marshall, Texas 75670; and Cricket Wireless authorized retailer, 120 East End Boulevard South, Marshall, TX 75670.

31. Lenovo, directly and through subsidiaries and agents (including authorized distributors, retailers, and others) designs, markets, distributes, makes, uses, imports, sells, and/or offers for sale Lenovo-branded and Motorola-branded wireless mobile devices (including smartphones, tablets, laptops, and watches) and related applications and services.

## JURISDICTION AND VENUE

32. This Complaint states causes of action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.,* and, more particularly 35 U.S.C. § 271.

33. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) in which the district courts have original and exclusive jurisdiction of any civil action for patent infringement.

34. LGL is subject to this Court's general personal jurisdiction pursuant to due process due at least to its substantial business conducted in this District, including: (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas in this District, including benefits directly related to the instant patent infringement causes of action set forth

herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District, and (iii) having committed the complained of tortious acts in Texas and in this District.

35. LGL, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website as well as other retailers) its products and/or services in the United States, the State of Texas and the Eastern District of Texas.

36. LGL, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas. These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas. LGL has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

37. Courts in Texas have concluded that LGL is subject to personal jurisdiction in the State of Texas for conduct and products similar to that identified in this Complaint. *See ACQIS v. Lenovo*, 572 F. Supp. 3d 291, 306-07 (W.D. Tex. 2021) (considering theories under stream of commerce and purposeful contacts by LGL subsidiaries and finding "that the exercise of personal jurisdiction over LGL is both reasonable and fair" under either theory); *AX Wireless LLC v. Lenovo Group Limited*, No. 2:22-cv-280, 2023 WL 7105701, *3-5 (E.D. Tex. 2023) (finding personal jurisdiction over LGL under a stream of commerce theory); *Universal Connectivity Technologies Inc. v. Lenovo Group Limited*, No. 2:23-cv-449, 2024 WL 4519760,

*4-5 (E.D. Tex. 2024) (same). GenghisComm incorporates the jurisdictional facts in those cases by reference as if set forth again herein.

38. Venue is proper in this District under §1400(b), which provides that "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Venue is proper as to Defendant because it has committed acts of patent infringement in this District and because it has multiple regular and established places of business in this District, as shown above.

## LENOVO'S INFRINGING PRODUCTS

39. Lenovo's use of the LTE/4G and 5G Standards infringed GenghisComm's patent claims.

40. Confidential fact discovery, including technical information from Lenovo and its third-party chipset suppliers (e.g. Qualcomm, MediaTek, etc.), will further confirm that Lenovo's devices infringe GenghisComm's patent claims.

41. Lenovo has been directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused smartphones, tablets, laptops, watches, and other mobile wireless devices in this District.

42. Lenovo's infringing products include its mobile devices that have standard or configurable LTE/4G network connectivity and meet the LTE standards and were sold or used in the U.S. since 2020 (six years before this Complaint). Lenovo's infringing LTE/4G products are collectively referred to as "Lenovo's LTE/4G Devices." Lenovo's LTE/4G Devices include devices that may also be 5G compliant. Lenovo's LTE/4G Devices include for example:

a. Lenovo and Motorola smartphones, e.g., Motorola One (all models available since 2020, including the Motorola One Zoom, Action, Hyper, Fusion+, Ace, UW, 5G, and other variants), Motorola Razr (all models available since 2020,

including the Motorola Razr Ultra, Plus, Fold, 5G, mmWave, and other variants), Moto G (all models available since 2020, including the Power, Stylus, Fast, Play, Pure, 5G, and other variants), Moto E (all models available since 2020), Motorola Edge (all models available since 2020, including the Motorola Edge Plus, UW, 5G, mmWave, and other variants), and ThinkPhone (all models available since 2023);

b. Lenovo and Motorola tablets, e.g., Moto Pad (all models available since 2026 with standard or configurable WWAN network connectivity), Lenovo Yoga Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Yoga Tab Plus and other variants), Lenovo Idea Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Idea Tab Plus and other variants), Lenovo Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Tab One, Lenovo Tab K series and other variants), Lenovo ThinkTab (all models available since 2020 with standard or configurable WWAN network connectivity);

c. Lenovo and Motorola laptops, e.g., Lenovo ThinkPad (all models available since 2020 with standard or configurable WWAN network connectivity, including the C series, L series, P series, T series, X series, Nano, Carbon, Titanium, Detachable, 2-in-1, Fold, and other variants), Lenovo Chromebook (all models available since 2020 with standard or configurable WWAN network connectivity, including the 100e series, 300e series, 500e series, Yoga Chromebook, and other variants), Lenovo Yoga (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo X Yoga series, Book series, Titanium, Chromebook, and other variants), Lenovo Flex (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Flex 5G and other variants); and

d. Lenovo and Motorola wearables, e.g., Moto Watch (all models available since 2026 with standard or configurable WWAN network connectivity, including Moto Watch Ultra).

43. Lenovo's infringing products further include its mobile devices that have 5G network connectivity and meet the 5G wireless standards and were sold or used in the U.S. since 2020 (six years before this Complaint). Lenovo's infringing devices are collectively referred to as "Lenovo's 5G Devices." Lenovo's 5G Devices include for example:

a. Lenovo and Motorola smartphones, e.g., Motorola One (all models available since 2020, including the Motorola One 5G, UW, Ace, and other variants), Motorola Razr (all models available since 2020, including the Motorola Razr

Ultra, Plus, Fold, 5G, mmWave, and other variants), Moto G (all models available since 2020, including the Moto G 5G, Power, Stylus, Play, and other variants), Motorola Edge (all models available since 2020, including the Motorola Edge Plus, UW, 5G, mmWave, and other variants), and ThinkPhone (all models available since 2023);

b. Lenovo and Motorola tablets, e.g., Moto Pad (all models available since 2026 with standard or configurable WWAN network connectivity), Lenovo Yoga Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Yoga Tab Plus and other variants), Lenovo Idea Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Idea Tab Plus and other variants), Lenovo Tab (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Tab One, Lenovo Tab K series and other variants), Lenovo ThinkTab (all models available since 2020 with standard or configurable WWAN network connectivity); and

c. Lenovo and Motorola laptops, e.g., Lenovo ThinkPad (all models available since 2020 with standard or configurable WWAN network connectivity, including the C series, L series, P series, T series, X series, Nano, Carbon, Titanium, Detachable, 2-in-1, Fold, and other variants), Lenovo Chromebook (all models available since 2020 with standard or configurable WWAN network connectivity, including the 100e series, 300e series, 500e series, Yoga Chromebook, and other variants), Lenovo Yoga (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo X Yoga series, Book series, Titanium, Chromebook, and other variants), Lenovo Flex (all models available since 2020 with standard or configurable WWAN network connectivity, including the Lenovo Flex 5G and other variants).

44. Lenovo's LTE/4G Devices comply with the mandatory requirements of 3GPP TS 36.211 version 8.7.0 ("LTE Standard").

45. LTE/4G phones must comply with the following sections of the 3GPP TS 36.211 version 8.7.0 LTE Standard:

5.1.1 Physical Channels
5.2 Slot structure and physical resources
5.2.1 Resource Grid
5.3 Physical uplink shared channel
5.3.1 Scrambling
5.3.2 Modulation
5.3.3 Transform Precoding
5.3.4 Mapping to Physical Resources

5.6 SC-FDMA Baseband Signal Generation
5.8 Modulation and Upconversion
7.1 Modulation mapping
7.2 Pseudo-random sequence generation

46. Lenovo's 5G Devices comply with the mandatory requirements of 3GPP TS 38.211 Version 15.2.0 ("5G Standard").

47. 5G phones must comply with the following sections of 3GPP TS 38.211 Version 15.2.0 5G Standard:

4.2 Numerologies
4.4.2 Resource Grid
4.4.4 Resource Blocks
4.4.4.1 General
5.1 Modulation mapper
5.2.1 Pseudo-random sequence generation
5.3 OFDM baseband signal generation
5.3.1 OFDM baseband signal generation for all channels except PRACH
5.4 Modulation and upconversion
6.3.1 Physical uplink shared channel
6.3.1.1 Scrambling
6.3.1.2 Modulation
6.3.1.4 Transform Precoding
6.4.1.1 Demodulation reference signal for PUSCH
6.4.1.2 Phase-tracking reference signals for PUSCH
6.4.1.4 Sounding reference signal
7.2 Pseudo-random sequence generation

## LENOVO'S DIRECT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT, AND CONTRIBUTORY INFRINGEMENT

48. Defendant LGL has been directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States.

49. Lenovo used the method claims itself and directly infringed the method claims.

50. On information and belief, LGL, including its officers, directors, employees, and agents use Lenovo's 4G/LTE Devices and Lenovo's 5G Devices in a manner that practices all

the steps in method claims.

51. On information and belief, Lenovo performs all of the steps of the method claims itself, including in testing, development, demonstrations, showcases, customer support, and training. *E.g*. testing, development, demonstrations, showcases, customer support, and training.

52. In addition, Lenovo directed end users to practice the method claims.

53. Lenovo controlled whether its 4G/LTE and 5G products use the 4G/LTE and 5G standards and practiced the method claims.

54. Lenovo decided to sell products in the U.S. that meet the 4G/LTE and 5G standards and derived a large direct financial benefit from doing so.

55. When a user used a Lenovo 4G/LTE or 5G product, the user and the Lenovo products acted under Lenovo's direction and control with respect to whether the claimed methods are practiced.

56. For example, Lenovo phones with 4G/LTE capability connected to 4G/LTE networks automatically if they were within range of the network.

57. For example, Lenovo phones with 5G capability connected to 5G networks automatically if they were within range of the network.

58. Lenovo's 5G Devices are designed to connect to 5G networks automatically.

59. Lenovo sets the default setting on, for example the Motorola Razr 5G, is "5G On (Automatic 5G/LTE/3G/2G)" (or "Automatic 5G"). In Automatic 5G, the Motorola Razr 5G automatically connected to 5G when the carrier's network is available and without user interference or user action with respect to the specific 5G technology that the phone uses. E.g. https://www.t-mobile.com/support/tutorials/device/motorola/razr-5g/topic/connections-amp-network/how-to-enable-5g/8

60. Motorola/Lenovo set the factory default "Preferred network type" to use 5G. This means the device is designed to seek out and connect to the 5G network.

61. Lenovo's phones show a 4G/LTE/5G indicator bar.

62. Lenovo advertised that it sold the "World's First 5G PC." https://www.youtube.com/watch?v=b1uRsQ7iNX4; https://news.lenovo.com/pressroom/press-releases/lenovo-transforms-traditional-form-factors-that-embrace-a-foldable-future-and-launches-worlds-first-5g-pc/; https://www.youtube.com/watch?v=30BKEKCsPWo; https://www.youtube.com/watch?v=Fa6to_qnamo.

63. Lenovo advertised that it introduced the first consumer Android tablet with dedicated 5G. https://news.lenovo.com/pressroom/press-releases/brighter-future-for-hybrid-with-premium-tablets-with-5g-and-next-gen-add-ons/; https://news.lenovo.com/pressroom/press-releases/all-new-connected-consumer-experiences-start-with-lenovo/.

64. Lenovo controls the infringing activity and retains control over its phones and PC, tablets, and other devices even after sale through preset settings and unchangeable functions and also by Lenovo sending software and security updates over the air to its phones.

65. Lenovo sent over-the-air (OTA) updates to its phones that directly relate to 4G/LTE and 5G network usage, 5G performance, and 5G capabilities. These updates can take the form of software updates or carrier settings updates.

66. Lenovo designed the accused products to perform the method steps automatically whenever Lenovo's products are used.

67. End users, and the Lenovo products, are under Lenovo's direction and control with respect to the infringing steps.

68. Of course, there *is* a user action in the use of Lenovo's devices (e.g. as phones to

make phone calls), but the users are not making ***an active decision*** with respect to use of the patented methods, which Lenovo directs and controls to occur automatically when the user uses Lenovo's devices. For example, the user chooses to use a Lenovo/Motorola phone to send a text message, but the user is not intervening in the specific signal processing techniques. The end user's act of *using* the device constitutes the performance of the method steps, even though the user does not consciously select or control the underlying claimed technology, Lenovo does. The user is involved (by using the phone), but Lenovo directs and controls the technical steps.

69. Alternatively, the end user of the Lenovo devices is the direct infringer of the method claims and Defendant LGL has also been, and now is, actively inducing infringement of the Patents-in-Suit under 35 U.S.C. § 271(b) by performing, or inducing end users to perform, every step in the claimed methods.

70. Defendant LGL knew about GenghisComm's patents, given GenghisComm's notice letters discussed in this Complaint.

71. Defendant LGL knew that GenghisComm's patents were essential to the 4G/LTE and 5G standards.

72. Defendant LGL knew that GenghisComm stated that its patents were essential to the 4G/LTE and 5G standards.

73. Lenovo intentionally complied with the 4G/LTE and 5G standards.

74. Lenovo intentionally intended its phones to function as described in the 4G/LTE and 5G standards.

75. Lenovo intended its phones to function as described in GenghisComm's claims.

76. Lenovo specifically intended its phones to function as described in the GenghisComm patent claims and for users to use them as 4G/LTE and 5G devices and as

described in the GenghisComm patent claims.

77. Lenovo actively encouraged infringement by designing its accused products to perform the method steps automatically whenever Lenovo's products are used, advertising compliance with the 4G/LTE and 5G standards and submitting its products for 4G/LTE and 5G compliance and interoperability testing and certification to ensure that they infringed.

78. Lenovo knew that its phones practiced the method claims.

79. Lenovo has no opinion of counsel from before the case was filed stating that Lenovo did not infringe.

80. The above evidence confirms that Defendant LGL knowingly induced infringement and possessed specific intent to encourage others' inducement.

81. Defendant LGL actively encouraged users of its 4G/LTE and 5G smartphones, tablets, and other mobile wireless devices to use its devices in a manner that infringes GenghisComm's patents.

82. Alternatively, if the end user of the Lenovo devices is the direct infringer of the method claim, Defendant LGL has been contributorily infringing of the Patents-in-Suit under 35 U.S.C. § 271(c) because Lenovo also offered to sell, and sold, within the United States, and imported into the United States 4G/LTE and 5G smartphones, tablets, and other devices that constitute a material part of the invention (if not the entire invention), knowing that Lenovo especially made them for use in an infringement of GenghisComm's patent.

83. For purposes of contributory infringement analysis, the components of Lenovo's smartphones, tablets, and other devices at issue are the software and hardware that allow the devices to operate on 4G/LTE or 5G cellular networks (the "4G/LTE or 5G Cellular Radio Components").

84. The 4G/LTE or 5G Cellular Radio Components are separate and distinct from the other functions of Lenovo's smartphones, tablets, and other devices and contributory infringement should be analyzed based on the separable 4G/LTE or 5G Cellular Radio Components rather than the entire products.

85. The 4G/LTE or 5G Cellular Radio Components are not staple articles of commerce suitable for substantial non-infringing uses.[6]

86. For purposes of contributory infringement analysis, the components of Lenovo's smartphones, tablets, and other devices at issue are the software and hardware that allow the devices to operate on 4G/LTE or 5G cellular networks (the "4G/LTE or 5G Cellular Radio Components").

87. Lenovo sold and imported the 4G/LTE and 5G smartphones, tablets, and other devices into the United States.

88. Lenovo knew its products (e.g. phones) were specifically designed or adapted for use in the infringing processes because Lenovo designed the products, including to meet the 4G/LTE and 5G standards, and Lenovo advertised and marketed the phones as meeting the 4G/LTE and 5G standards. Because Lenovo's 4G/LTE and 5G products are 4G/LTE and 5G phones, there is no substantial non-infringing use.

89. Lenovo makes and sells its products such that they are not just capable of performing the methods, they automatically perform the method steps, and without user intervention in the specific claimed technology.

**LENOVO'S KNOWLEDGE OF THE PATENTS-IN-SUIT AND CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE**

90. On November 4, 2020, counsel for GenghisComm sent separate letters to Lenovo

---

[6] *See, e.g. Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010).

and Motorola, informing each entity of GenghisComm's patents, and how Lenovo's devices with LTE/4G and 5G cellular connectivity infringed GenghisComm's patents. It was emailed and UPS confirmed that the letter was delivered. Including the claim charts, each letter was 105 pages. Lenovo has been aware of at least the '842, '227 and '568 Patents since at least November 4, 2020.

91. Scott Reid of Lenovo responded via email on November 11, 2020 and copied Carole Boelitz, also of Lenovo. According to Mr. Reid's email, Ms. Boelitz managed communications such as GenghisComm's.

92. Lenovo did not provide any further substantive correspondence afterwards.

93. On June 29, 2022, counsel for GenghisComm sent Lenovo additional letters (including detailed claim charts) via UPS and email to Scott Reid and Carole Boelitz of Lenovo informing Lenovo that it infringed GenghisComm's 11,075,786 and 11,223,508 Patents. UPS confirmed that the letters were delivered.

94. Lenovo responded via the email address "licensing@lenovo.com" on July 19, 2022, confirming receipt of GenghisComm's letter. Lenovo's response indicated that it was open to engaging in discussions and that future correspondence should be directed to Fergal Clarke.

95. On December 21, 2022, GenghisComm sent Lenovo an additional letter (including detailed claim charts) informing Lenovo that it infringed GenghisComm's 11,252,005, 11,381,285 and 11,424,792 Patents.

96. GenghisComm continued to offer Lenovo a license at the rate card rates. For example, on June 19, 2026; July 7, 2026; July 13, 2026; July 15, 2026; and August 17, 2025 GenghisComm contacted Lenovo by email.

97. Lenovo never agreed to enter into any licensing agreement with GenghisComm.

98. This Complaint serves as additional notice to Lenovo for each of the Patents-in-Suit and the manner in which the Patents-in-Suit are infringed.

99. Despite knowledge of the Patents-in-Suit and knowledge of the manner in which the Patents-in-Suit are infringed as demonstrated in the provided claim charts, Lenovo has continued to infringe, and/or induce the infringement of, the Patents-in-Suit through patent expiration.

## COUNT 1: INFRINGEMENT OF U.S. PATENT 11,381,285

100. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

101. On July 5, 2022, the ’285 Patent entitled “Transmit pre-coding” was duly and legally issued by the USPTO.

102. The ’285 Patent has a priority claim to earlier applications no later than August 2, 2004.

103. For the ’285 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of February 7, 2003.

104. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s 5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the “5G Standard”) and its requirements.

105. Lenovo infringed method claims of the ’285 Patent for at least the reasons set forth in the claim charts attached as Exhibits F and G, which is incorporated by reference in this Complaint.

106. Lenovo made, used, sold, imported, and/or offered for sale Lenovo’s 5G Devices that met each and every element of the claims of the ’285 Patent.

107. Lenovo’s 4G/LTE Devices met each and every element of the asserted claims of

the ’285 Patent, except claim 9 (e.g. Lenovo’s 4G/LTE devices meet claim 1 and 7). Exhibit G.

108. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo’s customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

109. Lenovo owes GenghisComm reasonable royalty damages for Lenovo’s Devices extending back six years from the filing date of this Complaint until the ’285 Patent expired.[7]

110. Lenovo had notice of infringement and knowledge of the ’285 Patent since December 21, 2022.

111. Lenovo’s infringement was willful.

**COUNT 2: INFRINGEMENT OF U.S. PATENT 10,200,227**

112. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

113. On February 5, 2019, the ’227 Patent entitled “Pre-coding in multi-user MIMO” was duly and legally issued by the USPTO.

114. The ’227 Patent has a priority claim to earlier applications no later than May 14, 2002.

115. For the ’227 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of November 2, 1999.

116. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the “LTE Standard”) and its

---

[7] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the ’839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

requirements for uplink physical channel communications. These communications were sent from Lenovo's LTE/4G Devices to eNodeB receivers located at cell sites.

117. Lenovo infringed the method claims of the '227 Patent for at least the reasons set forth in the claim chart attached as Exhibit H, which is incorporated by reference in this Complaint.

118. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo's LTE/4G Devices that met each and every element of the claims of the '227 Patent.

119. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo's customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

120. Lenovo owes GenghisComm reasonable royalty damages for Lenovo's LTE/4G Devices extending back six years from the filing date of this Complaint until the '227 Patent expired.[8]

121. Lenovo had notice of infringement and knowledge of the '227 Patent since November 4, 2020.

122. Lenovo's infringement was willful.

**COUNT 3: INFRINGEMENT OF U.S. PATENT 10,389,568**

123. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

124. On August 20, 2019, the '568 Patent entitled "Single carrier frequency division multiple access baseband signal generation" was duly and legally issued by the USPTO.

---

[8] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

125. The ’568 Patent has a priority claim to earlier applications no later than May 14, 2002.

126. For the ’568 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of November 2, 1999.

127. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the “LTE Standard”) and its requirements for uplink physical channel communications. These communications were sent from Lenovo’s LTE/4G Devices to eNodeB receivers located at cell sites.

128. Lenovo infringed method claims of the ’568 Patent for at least the reasons set forth in the claim chart attached as Exhibit I, which is incorporated by reference in this Complaint.

129. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo’s LTE/4G Devices that met each and every element of the claims of the ’568 Patent.

130. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo’s customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

131. Lenovo owes GenghisComm reasonable royalty damages for Lenovo’s LTE/4G Devices extending back six years from the filing date of this Complaint until the ’568 Patent expired.[9]

---

[9] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the ’839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

132. Lenovo had notice of infringement and knowledge of the ’568 Patent since November 4, 2020.

133. Lenovo’s infringement was willful.

**COUNT 4: INFRINGEMENT OF U.S. PATENT 11,223,508**

134. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

135. On September 19, 2017, the ’508 Patent entitled “Wireless communications using flexible channel bandwidth” was duly and legally issued by the USPTO.

136. The ’508 Patent has a priority claim to earlier applications no later than August 2, 2004.

137. For the ’508 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of April 24, 2002.

138. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s 5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the “5G Standard”) and its requirements.

139. Lenovo infringed the method claims of the ’508 Patent for at least the reasons set forth in the claim chart attached as Exhibit J, which is incorporated by reference in this Complaint.

140. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo’s 5G Devices that met each and every element of the claims of the ’508 Patent.

141. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo’s customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

142. Lenovo owes GenghisComm reasonable royalty damages for Lenovo’s 5G

Devices extending back six years from the filing date of this Complaint until the ’508 Patent expired.[10]

143. Lenovo had notice of infringement and knowledge of the ’508 Patent since June 29, 2022.

144. Lenovo’s infringement was willful.

**COUNT 5: INFRINGEMENT OF U.S. PATENT 11,804,882**

145. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

146. On October 31, 2023, the ’882 Patent entitled “Single Carrier Frequency Division Multiple Access Baseband Signal Generation” was duly and legally issued by the USPTO.

147. The ’882 Patent has a priority claim to earlier applications no later than July 22, 2005.

148. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the “LTE Standard”) and its requirements for uplink physical channel communications. Lenovo continues to make, use, sell, offer for sale, and import these infringing wireless devices.

149. Lenovo infringed the method claims of the ’882 Patent for at least the reasons set forth in the claim chart attached as Exhibit K, which is incorporated by reference in this Complaint.

150. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo’s LTE/4G

[10] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the ’839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

Devices that met each and every element of the claims of the ’882 Patent.

151. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo’s customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

152. Lenovo owes GenghisComm reasonable royalty damages for Lenovo’s LTE/4G Devices extending back six years from the filing date of this Complaint.[11]

153. After service of this complaint, Lenovo’s ongoing infringement will be willful.

**COUNT 6: INFRINGEMENT OF U.S. PATENT 9,768,842**

154. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

155. On September 19, 2017, the ’842 Patent entitled “Pre-coding in multi-user MIMO” was duly and legally issued by the USPTO.

156. The ’842 Patent has a priority claim to earlier applications no later than May 14, 2002.

157. For the ’842 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of November 2, 1999.

158. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the “LTE Standard”) and its requirements for uplink physical channel communications. These communications were sent from Lenovo’s LTE/4G Devices to eNodeB receivers located at cell sites.

[11] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the ’839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

159. Lenovo infringed the ’842 Patent claims for at least the reasons set forth in the claim charts attached as Exhibits L and M, which is incorporated by reference in this Complaint.

160. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo’s LTE/4G Devices that met each and every element of the claims of the ’842 Patent.

161. Lenovo had notice of infringement and knowledge of the ’842 Patent since November 4, 2020.

162. The ’842 Patent expired on May 14, 2022.

163. As a direct and proximate result of Lenovo’s acts of patent infringement, GenghisComm has been injured, and has sustained damages.

164. Lenovo owes GenghisComm reasonable royalty damages for Lenovo’s LTE/4G Devices sold and used from November 4, 2020 to May 14, 2022.

165. Lenovo’s infringement was willful.

## COUNT 7: INFRINGEMENT OF U.S. PATENT 11,252,005

166. GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

167. On February 15, 2022, the ’005 Patent entitled “Spreading and precoding in OFDM” was duly and legally issued by the USPTO.

168. For the ’005 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of April 16, 2003.

169. Lenovo made, used, sold, offered for sale, and imported wireless devices, Lenovo’s 5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the “5G Standard”) and its requirements.

170. Lenovo infringed method claims of the ’005 Patent for at least the reasons set forth in the claim charts attached as Exhibits N and O, which is incorporated by reference in this

Complaint.

171. Lenovo's 4G/LTE Devices meet each and every element of some of the asserted claims of the '005 Patent, (e.g. Lenovo's 4G/LTE devices meet claim 1). Exhibit O.

172. Lenovo has made, used, sold, imported, and/or offered for sale Lenovo's 5G Devices (and Lenovo's 4G/LTE Devices) that met each and every element of the claims of the '005 Patent.

173. For these method claims, to the extent that Lenovo argues that it is not the direct infringer, and that its phones do not directly infringe, Lenovo's customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

174. Lenovo owes GenghisComm reasonable royalty damages for Lenovo's Devices extending back six years from the filing date of this Complaint until the '005 Patent expired.[12]

175. Lenovo had notice of infringement and knowledge of the '005 Patent since December 21, 2022.

176. Lenovo's infringement was willful.

## **LENOVO'S WILLFUL INFRINGEMENT**

177. Lenovo has infringed the identified claims of each of the Patents-in-Suit despite its knowledge of the patents and its knowledge that Lenovo's LTE/4G Devices and Lenovo's 5G Devices were using the technology claimed by them since receiving notice from GenghisComm, and the objectively high likelihood that its acts constitute patent infringement.

178. After the dates of the notices from GenghisComm, Lenovo's infringement of the Patents-in-Suit is willful and deliberate, entitling GenghisComm to enhanced damages under 35

---

[12] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

U.S.C. § 284.

179. Lenovo's willful infringement and unwillingness to enter into license negotiations with GenghisComm make this an exceptional case such that GenghisComm should be entitled to recover its attorneys' fees and costs incurred in relation to this matter pursuant to 35 U.S.C. § 285.

## JURY DEMAND

GenghisComm demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GenghisComm requests that this Court enter judgment in its favor and against Lenovo as follows:

A. Adjudging, finding, and declaring that Lenovo has infringed of the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B. Awarding the past and future damages arising out of Lenovo's infringement of the Patents-in-Suit to GenghisComm in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Lenovo's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D. Adjudging, finding, and declaring that this is an "exceptional" case pursuant to 35 U.S.C. § 285;

E. Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F. Granting GenghisComm such other further relief as is just and proper, or as the Court deems appropriate.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Alison Richards*
Alison Aubry Richards
(IL Bar # 6285669 *also admitted in ED Texas*)
arichards@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

*Attorney for Plaintiff GenghisComm Holdings, LLC*